(34 Misc. Rep. 425.)

### FRENCH v. MATTESON.

(Supreme Court, Special Term, St. Lawrence County. April, 1901.)

BET ON HORSE RACE—RECOVERY.
In an action by an owner of a horse, who had bet upon him in a race and deposited the money, to recover the same from the stakeholder, under 2 Rev. St. (9th Ed.) p. 1763, avoiding all wagers bet on a race, and authorizing recovery of deposits from stakeholders, the forfeiture to the people of any sum so bet, as provided by Pen. Code, § 352, is no defense; the forfeiture being enforceable by the people only.

Action by David A. French against Herbert L. Matteson. Judgment for plaintiff.

A. X. Parker, for plaintiff.
Theodore H. Swift, for defendant.

RUSSELL, J. This controversy arises out of a horse race. It was not a race sheltered by the provisions of law applicable to contests of speed on regularly organized tracks, but an ice race over the waters of the Raquette river in January, 1898. Each party seemed possessed of a correct or credulous confidence, not uncommon to owners of fast horses, in the speed of his own animal. Which party issued the cartel of defiance to the other did not appear upon the trial, but that lack of proof may be deemed immaterial. One hundred dollars was put up by each in the hands of the defendant as stakeholder, the defendant taking $25 of the bet on behalf of the plaintiff, so that the risk to the plaintiff amounted only to the sum of $75. At the trial of the event the plaintiff became disgusted with the

treatment of his horse by the judges, claiming it to be unfair, and asserted that the handicap of a start with his horse several rods in the rear was not a risk which he assumed by the terms of the wager. Many witnesses were present at the trial to advise the court by their testimony upon the merits of the race as run up to the withdrawal of the horse, Elial T., but the court declined the responsibility of assuming the decision of the true inwardness of a horse race in addition to the legal problems presented. The sole question, therefore, is as to the liability of the defendant stakeholder to respond to the plaintiff for the amount placed in his hands to abide the event of the wager upon the race.

"Sec. 8. All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful. All contracts for or on account of any money or property, or thing in action so wagered, bet or staked, shall be void.

"Sec. 9. Any person who shall pay, deliver or deposit any money, property or thing in action, upon the event of any wager or bet herein prohibited, may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not." 2 Rev. St. (9th Ed.) p. 1763 (1 Rev. St. marg. pp. 661, 662).

But the counsel for the defendant urges that section 352 of the Penal Code, as enacted in 1882, is a quasi repeal of the general law, so far as bets on races between horses and other animals are affected. That section reads as follows:

"Sec. 352. All racing or trial of speed between horses or other animals for any bet, stake or reward, except such as is allowed by special laws, is a public nuisance; and every person acting or aiding therein, or making or being interested in such bet, stake or reward, is guilty of a misdemeanor; and in addition to the penalty prescribed therefor, he forfeits to the people of this state, all title or interest in any animal used with his privity in such race or trial of speed, and in any sum of money or other property betted or staked upon the result thereof."

It is obvious that section 8, declaring all bets void, is unaffected by the provision in the Penal Code. The same necessity for the practical enforcement of its provisions which allowed the right of recovery afforded by section 9 may still exist, notwithstanding the additional provision in regard to horse racing provided for by the Penal Code. Section 9 of the Revised Statutes was designed to make the declaration of section 8 effective as a deterrent, by giving to the defeated party the right to recover the amount he deposited; thus exciting pecuniary cupidity to overcome a reluctance to violate the gambling code of honor, and thus expose each party wagering to the loss of the money won, by fair means or foul, and also the stakeholder to the risk of losing the sum paid over to the successful party. It may well be that the statute had a further object in view. Oftentimes such wagers were made by men unable to pay their own debts, or those with dependents hanging upon them, who needed the sum wagered for their sustenance. In the one case creditors, by proper proceedings, could reach the sum passed over, and in the other the

influence of needy ones might compel affirmative action by the loser for its return. Those objects are not met by the provisions of the Penal Code. It makes the illegal betting a misdemeanor, and forfeits to the people of the state all interest in the animal used, and any sum of money bet upon the result of the race. The provisions creating the misdemeanor and the forfeiture of the animal do not affect the general law, and that in regard to the forfeiture of the money is only enforceable in case the forfeiture is sought by the proper officer for the people of the state. Under its provisions the district attorney of the county might very likely compel the successful wagerer to pay $100, and if the plaintiff gets back his $75 the people might also recover that sum from him, but only in the event of his obtaining that sum through the medium of this suit, as otherwise he has lost it forever. To shelter the other bettor in the successful possession of his gains, unless disturbed by the district attorney, and then only to the extent of his own deposit, leaving that of the plaintiff in his pocket, and to protect the stakeholder in an unlawful transaction, I cannot hold that provision for a forfeiture of the thing advanced eo instanti passes the title of the plaintiff's money to the people of the state by the contemporaneous action of the statute, or that it is any concern of the stakeholder or the successful bettor what becomes of the money to which they have no title, or whether the people of the state of New York care to divert it to the public treasury. The provisions of the Revised Statutes, as between the parties to the unlawful transaction, are still in force, and upon their authority judgment must go against the defendant for the sum claimed, with interest and costs.

Judgment for plaintiff, with costs.